IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
SCOTT LESTER, individually and  )
on behalf of similarly          )
situated persons,               )
                                )
               Plaintiff,       )
                                )
       v.                       )     1:22cv616
                                )
TRIAD PIZZA, LLC, BD PIZZA CO.  )
LLC, PIEDMONT PARTNERS LLC,     )
PIEDMONT PIZZA INC., PIZZA      )
PIEDMONT LLC, AND BRADLEY C.    )
DAVIS,                          )
                                )
               Defendants.      )
```

### ORDER AND JUDGMENT
### GRANTING FINAL APPROVAL OF
### CLASS AND COLLECTIVE ACTION SETTLEMENT AND RELEASE AGREEMENT

This is a putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and a putative class action under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 et seq. Plaintiff contends that Defendants "use[d] a flawed method" to reimburse pizza delivery drivers for expenses related to the drivers' vehicles, which resulted in "unreasonably low rate[s]." (Doc. 17 ¶¶ 1-2.)

Before the court is Plaintiff Scott Lester, Jr.'s "Unopposed Motion for Final Approval" of the parties' settlement. (Doc. 23.) The court held a final approval hearing on November 8, 2023, and has reviewed the record in its entirety. For the reasons that follow, the motion will be granted.

**I.  BACKGROUND**

On August 2, 2022, Lester filed this action against Defendants, alleging that they failed to pay him and other drivers a minimum wage while employed at their Domino's Pizza stores. (Doc. 1 ¶ 1; Doc. 17 ¶ 1.)  On October 28, 2023, the parties filed a joint motion to stay the action pending mediation (Doc. 8), and on March 8, 2023, they notified the court that a settlement had been reached (Doc. 11).  On June 28, 2023, the court permitted Lester to join additional necessary parties and file the proposed amended complaint.  (Doc 16.)  On July 18, 2023, court entered an order of preliminary approval of the parties' settlement (Doc. 22) as laid out in the submitted Settlement and Release Agreement ("Agreement") (Doc. 15-3).

On October 27, 2023, Lester filed an unopposed motion for final approval of the class action and collective action settlement.  (Doc. 23.)

On November 8, 2023, the court held a fairness hearing to review the terms of the Agreement, hear any objections, and determine whether the proposed settlement should be approved, including the requests for attorneys' fees. Corresponding largely with Plaintiff's supporting brief (Doc. 23) and the written settlement agreement (Doc. 15-3), the parties informed the court that the total settlement amount was not to exceed $160,000. (Doc. 15-3 ¶ 26.)  Further the settlement funds would be allocated as

2

follows: no more than $79,166.67 to Class Members as the net settlement fund (id. ¶ 15)[1]; $53,333.33 to Lester's counsel for reasonable attorneys' fees (id. ¶ 34); $2,500 to Lester as a service payment for acting as class representative (id. ¶ 35); up to $15,000 to the claims administrators for costs of incurred during administration; and $10,000 plus any additional amounts remaining from the net settlement fund to a reserve fund for late claims and contingencies that arise during the reserve fund period, at which time any balance of the reserves will revert to Defendants (id. ¶¶ 24, 37-38).[2]

---

[1] As per the Agreement, the net settlement fund is to be divided into two sub-funds: a FLSA Claim Fund and a Minimum Payment Fund. (Doc. 15-3 ¶ 37.) Class members who have submitted a claim will receive payment from the FLSA Claim Fund in a minimum amount of $25.00, with the actual amount to be determined based on the Defendant's records of the miles driven and the calculation process laid out in ¶ 38. (Id.; see id. ¶ 38.) Class members who did not submit a claim but also did not affirmatively opt-out of the settlement will receive a payment from the Minimum Payment Fund in the amount of $25.00. (Id. ¶ 37.) Any unclaimed amounts under both funds remaining after 180 calendar days will revert to the reserve fund, see infra n.2, and be made available for late claimants. (Id.)

According to Plaintiff's counsel at the hearing, notice was sent successfully to 501 class members. Of those, 70 class members submitted successful claim forms and will receive payment from the FLSA Claim Fund. The remaining 431 class members will receive payment from the Minimum Payment Fund, and any currently unknown qualifying future claimants will receive payment from the reserve fund.

[2] The Agreement noted that the $10,000 plus overflow from the net settlement fund would be held in a "Reserve Fund" and revert back to Defendants after the "Reserve Fund Period," which is defined as "the period beginning on the calendar day following close of the Notice Period through the expiration of the three-year statute of limitations under the Fair Labor Standards Act, which will be three years following Preliminary Approval." (See Doc. 15-3 ¶¶ 24, 37-38.) The parties contend this date is July 18, 2026, because the court ordered preliminary approval of the settlement on July 18, 2023 (Doc. 22).

3

## II. APPLICABLE LAW

Pursuant to § 216(b) of the FLSA, when an action is brought by an employee against his employer to recover back wages, the proposed settlement must be presented to the district court for review and determination that the settlement is a fair and reasonable compromise of disputed claims and issues arising from a *bona fide* dispute. Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353-54 (11th Cir. 1982); Taylor v. Progress Energy Inc., 493 F.3d 454, 460 (4th Cir. 2007), superseded on other grounds as recognized by Whiting v. Johns Hopkins Hosp., 416 F. App'x 312, 316 (4th Cir. 2011).

"[T]here is a judicial prohibition against the unsupervised waiver or settlement of claims" under the FLSA. Taylor, 493 F.3d at 460 (citing D.A. Schulte, Inc. v. Gangi, 328 108, 114-16 (1946)). Thus, courts must determine that an FLSA settlement between an employee and an employer represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" before approving the settlement. Hargrove v. Ryla Teleservices, Inc., No. 2:11cv344, 2013 WL 1897027, at *10 (E.D. Va. Apr. 12, 2013) (quoting Lynn's Food Stores, 679 F.2d at 1355). When deciding whether there is a *bona fide* dispute as to a defendant's liability, courts consider the pleadings and the proposed settlement agreement. Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 408 (D. Md. 214) (citing Lomascolo v. Parsons Brinckerhoff,

4

Inc., No. 1:08cv1310, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009)). Here, Lester's FLSA claims constitute a *bona fide* dispute.

Although the Fourth Circuit has not directly addressed the relevant factors to consider when determining whether an FLSA settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e). See Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); Lomascolo, 2009 WL 3094955, at * 11. For example, some courts have cited the following factors for consideration: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery. Hargrove, 2013 WL 1897027, at *2 (citing Lomascolo, 2009 WL 3094955, at *10). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." Lomascolo, 2009 WL 3094955, at *10 (quoting Camp v. Progressive Corp., No. 01-2680, 2004 WL

5

2149079, at *5 (E.D. La. Sept. 23, 2004)).

**III. RELEVANT FACTORS FAVORING SETTLEMENT**

In considering the relevant factors, the court finds the following: (1) the parties have engaged in informal discovery, which included the production of all of the data necessary for Lester to calculate class-wide potential damages and an investigation into the merits of the claims and the Defendants' defenses in anticipation of mediation, giving both parties a reasonable understanding of the contours of their dispute (Doc. 23 at 11); (2) the stage of the proceedings and the complexity, expense, and likely duration of continued litigation favor settlement, as Defendants intended to otherwise vigorously contest the claims (id. at 9); (3) there is an absence of any collusion or fraud in the settlement agreements produced by the arms-length mediation (id. at 11); and (4) Plaintiff's counsel is experienced in such cases, having litigated numerous other wage and hour matters like the one here (id.). The court has also considered the probability of Plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, both of which counsel in favor of approving the settlement. (See id. at 9-14 (explaining how "significant risks exist" for both parties with respect to both the questions of liability and damages if litigation were to continue while the Agreement adequately compensates all parties to the matter).) The Agreement appears to

6

be the product of arms-length bargaining between both sides' experienced counsel, who "were in a sufficient position to evaluate the merits and defenses, and vigorously debated their positions during the all-day mediation, with the assistance of a highly respected mediator." (Id. at 11.) Further, to date there has been no objections filed to the settlement, and no one appeared at the fairness hearing to object. (Id. at 2.) As a result, the court finds the settlement fair, reasonable, and adequate, and the settlement should therefore be approved.[3]

**IV. ATTORNEYS' FEES & COSTS**

The FLSA authorizes "a reasonable attorney's fee to be paid by the defendant, and costs of the action" in addition to any judgment awarded to the plaintiff. 29 U.S.C. § 216(b); see Poulin v. Gen. Dynamics Shared Res., Inc., No. 3:09-CV-00058, 2010 WL 1813497, at *3-4 (W.D. Va. May 5, 2010) ("[T]he language of the FLSA contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs,' . . . .") (quoting Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946)). The court may consider granting fees either as a percentage of the recovery or based on a "lodestar" method, in which the court multiplies the number of hours counsel

---

[3] The parties state, and the record reflects, that the Defendants have complied with the Class Action Fairness Act Notice Requirements pursuant to 28 U.S.C. § 1715 and have satisfied all of their obligations under that section. (See Doc. 21 ¶ 5.)

7

worked by the hourly rate of similarly experienced counsel in the area. See In re Hatteras Fin., Inc., S'holder Litig., 286 F. Supp. 3d 727, 733 (M.D.N.C. 2017); Deloach v. Philip Morris Cos., No. 1:00CV01235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003). According to Lester, the Settlement and Release Agreement here contemplates an award of fees based on the percentage method, awarding fees of less than 33% of the total settlement amount. (Doc. 23 at 19; see Doc. 15-3 ¶ 34.)

The court is not bound by the parties' determinations as to the proper fee award; instead, it must "carefully review the application for reasonableness to ensure that counsel has not exploited the class action vehicle for their benefit." In re Hatteras Fin., Inc., 286 F. Supp. 3d. at 734. The Fourth Circuit considers twelve factors in judging the reasonableness of an award of attorneys' fees in FLSA cases:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978),

superseded by statute on other grounds as recognized by <u>Knapp v. Americredit Fin. Servs.</u>, 245 F. Supp. 2d 841, 848 (4th Cir. 2003).

The court cannot easily apply all of these factors as counsel has not submitted detailed timesheets, but rather have filed a declaration detailing their work. Based on that, it would nevertheless appear that the balance of these factors supports the conclusion that the fee contemplated in the Agreement is reasonable under the circumstances. Plaintiff's counsel represents they have spent over 100 hours on this action, "not account[ing] for (1) the hours worked by support staff such as paralegals, law clerks, and intake personnel, (2) time incurred by local counsel, or (3) any time yet to be incurred to fully and finally administer the settlement." (Doc. 23 at 20.) The total amount of fees counsel have in the case is $54,775.00 as of October 27, 2023. (Doc. 23-3 at 5.) Further, Plaintiff's counsel contends that their attorneys have been recently approved in similar litigation for fee rates of $350 per hour for Katherine Serrano and $700-740 per hour for J. Forester. (<u>Id.</u> at 20.) And they provide support for the contention that those rates fall within the range of what this court in the past has previously determined to be the prevailing market rates in the relevant community for this type of work. <u>See Ford v. Cardinal Innovations Healthcare Sols.</u>, No. 1:20-CV-736, 2022 WL 558376, at *5 (M.D.N.C. Jan. 21, 2022) ("rates for similarly experienced attorneys in the Middle District of North

9

Carolina are 'from $400-$600 or more' per hour"); Reynolds v. Fid. Investments Institutional Operations Co., Inc., No. 1:18-CV423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) (approving attorney's fees rates ranging from $275-$650); Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approving rates as follows: paralegal $125/hour, attorneys $400-$575/hour).

Because the parties seek to award fees based on a percentage of the settlement rather than a lodestar calculation, however, the impact of the lack of detailed timesheets is minimized. On a contingency basis, Plaintiff counsel's fees would be $53,330.33, calculated over the maximum payout under the Agreement. This represents a lodestar multiplier of less than 1.0, especially considering there are approximately 25 hours more of attorney work involved yet to be completed according to counsel. "Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee." Kirkpatrick, 352 F. Supp. 3d at 507 (citations omitted). Because Plaintiff's counsel's lodestar multiplier is within the generally accepted range, and because its percentage fee of the settlement fund falls within a generally accepted range, the fees requested are reasonable and will be approved.

Moreover, Plaintiff's counsel here agreed to represent Lester and the putative class on a contingency at significant financial

risk and have invested substantial time and energy to obtain this settlement. They secured significant recovery for all class members and provided substantial value working on time-consuming class action litigation preparation without receiving any payment in advance. (See Doc. 23 at 21.) "Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" Aros v. United Rentals, Inc., Civ. A. No. 3:10-CV-73, 2012 WL 3060470, at *4 (D. Conn. July 26, 2012) (quoting Sand v. Greenberg, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)).

In addition, the court will approve up to $15,000 as allocated for the administration fund to be used for administrator fees in execution of the settlement. (Doc. 15-3 ¶¶ 3, 36.) Plaintiff's counsel has provided declarations indicating that the third-party administrator in this case to date has incurred $13,258.78 in expenses. (Doc. 23-2 ¶ 14.) The court therefore finds that an allocation of no more than $15,000 for administration fees to be reasonable.

**V. Service Payment**

Service payments for named Plaintiffs "compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action." Kirkpatrick, 352 F. Supp. 3d

11

at 507-08 (quoting DeWitt v. Darlington County, S.C., No. 4:11-cv-00740-RBH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013)). In particular, service payments "are justified when necessary to induce individuals to become named representatives." In re Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001); Dorn v. Eddington Sec., Inc., No. 08 Civ. 10271 (LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (granting a $10,000.00 award to the named plaintiff). "To determine whether [a service] payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Kirven v. Central States Health & Life Co. of Omaha, No. 3:11-2149-MBS, 2015 WL 1314086, at * 13 (D.S.C. Mar. 23, 2015).

Lester's assistance in the litigation as the named Plaintiff in this case warrants a service payment. Lester provided guidance to counsel and participated actively in the settlement process, helping to secure the Agreement. (Doc. 23 at 24-25.) Therefore, the court finds it reasonable to award the modest service fee of $2,500, and it will do so.

## VI. CONCLUSION

For the reasons stated,

12

Case 1:22-cv-00616-TDS-JEP    Document 28    Filed 11/09/23    Page 12 of 14

at 507-08 (quoting DeWitt v. Darlington County, S.C., No. 4:11-cv-00740-RBH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013)). In particular, service payments "are justified when necessary to induce individuals to become named representatives." In re Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001); Dorn v. Eddington Sec., Inc., No. 08 Civ. 10271 (LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (granting a $10,000.00 award to the named plaintiff). "To determine whether [a service] payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Kirven v. Central States Health & Life Co. of Omaha, No. 3:11-2149-MBS, 2015 WL 1314086, at * 13 (D.S.C. Mar. 23, 2015).

Lester's assistance in the litigation as the named Plaintiff in this case warrants a service payment. Lester provided guidance to counsel and participated actively in the settlement process, helping to secure the Agreement. (Doc. 23 at 24-25.) Therefore, the court finds it reasonable to award the modest service fee of $2,500, and it will do so.

## VI. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED AND ADJUDGED that the Unopposed Motion for Final Approval of Class and Collective Action Settlement Agreement (Doc. 23) is GRANTED and the court hereby:

(1) finally certifies the collective action pursuant to Section 216(b) of the FLSA and the class action pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only;

(2) grants final approval of the Agreement and adjudges its terms to be fair, reasonable, and adequate, and directs consummation of its terms and provisions;

(3) finds that Defendants have complied with all their obligations pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 with respect to this class action settlement;

(4) approves distribution of the Net Settlement Fund, as defined in the Agreement, to the participating class members;

(5) approves a service award payment in the amount specified in the Agreement to Named Plaintiff Scott Lester, Jr.;

(6) approves payment of the actual costs of the Settlement Claims Administrator in the amount specified in the Declaration of Jeffrey D. Johnson;

(7) approves attorneys' fees and advanced litigation costs to Collective Counsel in an amount not to exceed one-third (1/3) of the total Settlement amount;

(8) permanently enjoins all Settlement Class Members from prosecuting against Defendants and the Released Parties (as

13

defined in the Agreement) any and all of the Settlement Class Members' Released Claims (as defined in the Agreement);

(9) permanently enjoins the Class Representative from prosecuting against Defendants and the Released Parties any and all of the Class Representative's Released Claims (as defined in the Agreement); and

(10) enters a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

/s/   Thomas D. Schroeder<br>United States District Judge

November 9, 2023

14

Case 1:22-cv-00616-TDS-JEP    Document 28    Filed 11/09/23    Page 14 of 14